F. E. WINSLOW *v.* THE COMM'RS of PERQUIMANS COUNTY.

A municipal corporation may be sued in any form appropriate to the
cause of action; its liability does not, as respects the form of action,
differ from that of a private corporation, or an individual:

*Therefore,* an action in the form usual upon money demands, was sus-
tained against a county, for a debt due on a contract in regard to
bridge building.

*Semble,* that the plaintiff, upon a proper prayer for judgment, might in such
a case, have had a *mandamus,* to compel the defendants to levy a tax
and pay his debt.

(Distinction between Corporations, and *quasi*-Corporations stated.)

(Methods of satisfying judgments against municipal corporations, con-
sidered and discussed.)

(*Meares* v. *Comm'rs of Wilmington,* 9 Ire. 73; *Brown* v. *Comm'rs of Wash-
ington,* 63 N. C. 514; *Tucker* v. *Justices of Iredell,* 1 Jon. 451; *McKay* v.
*Justices of Harnett,* 6 Jon. 488; *Biggs, ex parte,* ante, 202, cited and
approved.)

*By* DICK, J. *dissenting.*   A *mandamus* is still the only remedy against a
county, for failing, or refusing, to pay its debts.

ACTION for money, tried by *Pool, J.,* at Fall Term 1869
of PERQUIMANS Court.

The plaintiff, under a contract with the county, had built

a *float bridge*, which had been accepted ; his claim had also been audited, an order upon the Treasurer given therefor, and partial payments thereon made.   About $2400 remained unpaid, and for this he brought the form of action usual in money demands, the judgment demanded being "for the sum of $2,433 58, with interest from" &c.

The defendants demurred to the complaint, upon the ground that *mandamus* is the only form of action proper against counties, &c.

His Honor . sustained the demurrer, and the plaintiff appealed.

*Bragg*, for the appellant.
*Phillips & Merrimon, contra.*

RODMAN, J.  The defendants are the Board of Commissioners for Perquimans County.  The case states that, under a contract with the former County Court, the plaintiff built a certain bridge for which the County was indebted to him : that the defendant admitted the debt, and through their County Treasurer paid a part of it.   The action is brought to recover the residue. The defendants demurred, and the only question is, whether a Board of Commissioners for County can be sued otherwise than in an action of *mandamus*.

In my opinion, in a case where a good cause of action exists, a municipal corporation may be sued in any form appropriate to the cause of action, and its liability does not differ as respects the form of the action, from that of a private corporation, or of an individual.   What will be the effect of the judgment, and how it is to be enforced, are questions not before us for decision, and having no bearing on the form of the action.

My reasons for this opinion may be classed under two heads:

1. Those going to show that the ordinary action to recover a debt is maintainable against a municpal corporation.

2. Those arising out of the nature of a *mandamus*, and going to show that it cannot be the only remedy.

By the Constitution, Counties are regarded as munici corporations. Art. VII, especially Secs. 7 & 43. The of 1868, ch. 20, p. 22, concerning the government of Count says: "Every County is a body politic and corporate." 1, Sec. 1: "It has power: To sue and be sued in name of the Board of Commissioners." "To make s contracts as may be necessary to the exercise of its powe Sec. 3: "To liquidate and audit accounts against the Coun and direct the raising of the sums necessary to defray the Ch. 2, Sec. 6. Under our former system, the Counties w not considered corporations, but at most, only *quasi* corp ations. Hence, the cases in which Justices of Counties h been sued by *mandamus* (although none of them decide t to be the exclusive remedy) are not precedents in point n to prove that remedy exclusive; neither, for the same reas are any, where the liabilities of merely *quasi* corporations are d cussed, arguments in favor of that view. On the contra I think those cases support the view I take, viz: that a c poration, municipal, *quasi,* or other, may be sued in any fo appropriate to the cause of action, and to the nature of t relief demanded. The leading case on the liability of *qu* corporations, such as hundreds, parishes, &c., in Englar and such as our Justices of the County Courts, Wardens the Poor, &c., formerly were, is, *Russell* v. *The men of Dev* 2 T. R., 667. That was an action on the case, against t men dwelling in Devon, to recover damages for an accide occasioned by the road being out of repair. The plaint failed, not because of the form of his action, but because had no right against the defendants.

The doctrine of *quasi* corporations, as I understand it, is th When a statute imposes upon an uncertain body of me such as the inhabitants of a Hundred or County, a certa duty, without expressly incorporating them, if the duty such that a civil liability will arise in favor of any pers injured by a breach of it, the courts, in order that there m be no right without a remedy, hold the body to be a corpor

WINSLOW *v.* the COMM'RS of PERQUIMANS COUNTY.

*quoad* that liability. It is not a corporation, except by
ication only, and for a single purpose, therefore it is called a
*i* corporation. The expression that no action will lie
nst such a corporation, unless given by statute, means
unless the liability be imposed by a statute, for, there
g none of common right, it can only exist by statute.
if the statute gives the right, the common law provides
ustomary remedy, as it did under the Statute of Win-
13 Ed. 1, making Hundreds liable for robberies, &c., by
ction on the case.

it, apart from any inference to be derived from cases of
sort, what reason can be assigned why a corporation
ld not be sued in any form appropriate to the cause of
n ? The diverse forms of actions arose out of the diver-
in the nature of the rights claimed, and not out of any
ence in the quality or kind of the defendants : if that
ence is of any consequence at all, it only becomes so
the right has been ascertained by judgment, and when
uestion is as to enforcing it. Of course it is not dispu-
y any one, that a corporation may be sued. But in the
of a corporation authorized to sue and be sued gener-
why limit the quality to a single form of action ? I do
hink there is any authority for doing so, and this court
t least once, sustained another action than *mandamus*
st express municipal corporations, such as counties now
*Meares* v. *Com. of Wilmington*, 9 Ire. 73 ; *Brown* v.
*of Washington*, 63 N. C. 514. The only reason I have
l suggested for the exemption contended for, is a sup-
l difficulty in enforcing a judgment in debt against a
cipal corporation. It is said that the county property, the
house &c., cannot be levied on, and there is nothing
o take. That may be admitted, and the supposed diffi-
still not exist. In recoveries against the hundred un-
he Stat. of Hue and Cry. 13 Ed. 1, the execution
ied on the property of any inhabitant of the hundred,
*Dig. Hundred* ; and in *Russell* v. *Men of Devon*, 2 T·

R. 667, it was conceded that such would be the plaintiff's remedy if he had a right to recover; See also *Tapping* on *Mand,* 317. However this may be, and it may be a matter requiring legislation, a judgment in *mandamus,* when it is for the payment of money, which is said in *Tucker* v. *Justices of Iredell,* 1 Jon. 451, to be its proper form, has on advantage in that respect over a judgment in debt. In *McKay* v. *Justices of Harnett,* 6 Jon. 488, it was said that the judgment could be collected out of the individual Justices, who might reimburse themselves by levying a tax. See also *The Queen* v. *Vittoria Park Co.* 41 E. C. L. 547. Of course, this method is equally practicable upon a judgment in debt. But it deserves consideration whether under sections 264 &c., of the C. C. P. respecting proceedings supplementary to execution, the means of enforcing payment there provided, may not be found practically so sufficient and convenient, as to make it unreasonable to resort now to the property of individuals.

There is another argument which seems to me very strong against the view that *mandamus* is the only remedy against a county. Before the Stat. 9 Anne, ch. 20 (Rev. Code ch. 95, s. 5.) if a respondent to a *mandamus* made a return good in law, although false in fact, the court was obliged to give judgment against the petitioner, whose only remedy then was an action on the case for a false return ; *Tucker* v. *Justices of Iredell.* So that it would follow, if a county could not be sued in an action in the case, it could before that statute escape liability altogether by the expedient of a false return ; a proposition that cannot be admitted.

But if it were true, that by reason of a county having no corporate property liable to execution, a judgment in debt would be barren, it will not follow that mandamus is the proper remedy, "for if the writ were to be granted because there happened to be no chattels seizable, it would be difficult on principle to refuse it in any case where the sheriff should return *nulla bona.*" *Tapping on Mand.* 24.

WINSLOW *v.* the COMM'RS of·PERQUIMANS COUNTY.

If I have maintained my first position, the second follows. f course, for it is admitted, that mandamus will only lie hen there is no other adequate legal remedy; *Tapping* 18, *Biggs, ex parte,* at this term. But there is another reason, rising out of the nature of the action of mandamus, which seems to me is conclusive against the idea of its being an xclusive remedy against counties. It lies only to enfore a egal as distinguished from an equitable right; *Tapping* 18, nd obviously counties may be subject to trusts or other urely equitable liabilities, which upon the doctrine conended for, would be without remedy.

I do not say that the plaintiff would not have been entied to a mandamus in this case, if his prayer were ,that the efendant might be compelled to levy a sufficient tax, and hereupon to pay his debt, for that is a relief which he can btain in no other way.

I think there was error in the ruling of the Judge.

Let this opinion be certified.

PEARSON, C. J. I concur in this opinion.

SETTLE, J. I concur in the opinion of Justice Rodman.

DICK, J. (*dissenting.*) Under our former system of government, if the Justices of a county made a contract with a erson, in pursuance of powers vested in them by law, they uld be compelled by a writ of *mandamus,* to perform such ntract, upon their legal liability being clearly established. *cKoy* v. *Jus. of Harnett* 6 Jon. 488. This writ was anted to a person having a just claim under such contract, ecause he had no remedy by an ordinary action, to compel ese officers to perform a public duty.

Under our present system of government, many of the ublic duties which were performed by the Justices of a ounty, are now entrusted to five Commissioners. A person

having a specific legal claim against a county, may still enforce his right by a writ of *mandamus* against the commissioners, unless the Code of Civil Procedure affords him an adequate remedy by civil action : C. C. P. sec. 392.

It is therefore necessary for me to consider in this case, whether the plaintiff can obtain adequate relief by a civil action against the county as a body corporate.

The act of 1868, ch. 20, provides that "every county is a body politic and corporate and has the powers specified by statute, or necessarily implied in such a body and no others." It has power to sue and be sued in the name of the commissioners.

A county is only a *quasi* corporation, established exclusively for public and political purposes, and constitutes, a part of the government of the State. It is entrusted with many high and important functions, which are to be exercised by its officers for the public benefit. The Legislature may, at will, enlarge or modify these functions, but public policy requires that they shall not be impaired by the private action of a citizen, except by the authority of a statute expressly defining the force and extent of such action. The common law does not give any such right of action, and it cannot arise by implication from a general statute providing merely that such a corporation may "sue and be sued."

(1.) The law does not contemplate the satisfaction of a claim against a county, in any other manner than by an assessment upon the taxable property of its citizens; Act of 1868, ch. 20, ch. 2, sec. 8, par. 1, s. 3, 9, to 13. If the present action can be maintained, then the plaintiff, upon obtaining a judgment, is entitled to an execution, under which he may sell the court house and jail, and thus obstruct entirely, or produce great inconvenience in, the public administration of justice, and render insecure the public records and papers in which every citizen is interested. The bare statement of such a proposition seems to me to be sufficient to show its fallacy. It cannot be possible that the law by mere

implication gives an action when a judgment cannot be enforced by final process without great detriment to the public interests.

I therefore entertain the opinion that a private action cannot be brought against a county for neglect or omission to perform a public duty, without some express statute directing the manner in which a judgment in such action can be satisfied; *Eastman* v. *Meredith* 36 New Hamp. 296, where the authorities are fully cited and ably commented upon.

"The reasons which exempt these public bodies from liability to private actions based upon neglect to perform public duty, do not apply to villages, boroughs and cities which accept special charters from the State. The grant of this corporate franchise in these cases, is usually made only at the request of the citizens to be incorporated, and it is justly assumed that it confers a valuable privilege. This privilege is a consideration for the duties which the charter imposes. In this respect these corporations are regarded as occupying the same position as private corporations," &c. Cooley on Con. Lim. 247 ; *Meares* v. *Commissioners of Wilmington,* 9 Ire. 73. Counties and townships do not usually possess corporate powers under special charters, but they exist under general laws, and have to perform certain public duties as a part of the machinery of the State. "Whether they will assume these public duties and exercise these powers they are not allowed the privilege of choice" Cooley, 240. The plaintiff's counsel insists that this action may be prosecuted to judgment, and then the plaintiff can apply for a writ of *mandamus* to enforce the payment of his claim. The law certainly cannot contemplate such circuity of action when the same result can be obtained by a direct remedy, enforceable by attachment.

The proceedings in this case cannot be regarded as an application for a *mandamus*, as that high prerogative writ can be granted only by the Judge of a Court of superior jurisdiction.

15

In my opinion his Honor was right in sustaining the demurrer.

PER CURIAM.                           Error.