J. F. GILBERT and others v. WILLIAM G. JAMES.

*Agent—Evidence—Trial—Deed—Parties—Presumption—Fraud*

1. An agent's declarations, accompanying an act, are not admissible to prove his authority, unless the agency be first shown *aliunde*.

2. Where a judge commits an error in excluding proper evidence, or allowing improper evidence, it is his duty to correct it before the jury retire.

3. A deed conveying the estate which the grantor has or may hereafter have as heir to the ancestor, does not operate to include an interest subsequently acquired in the share of a deceased brother; it embraces no more than the grantor owned at the date of the deed.

4. A commissioner making sale of land under an order of court and receiving the purchase money, is not a necessary party to an action to impeach the decree.

GILBERT *v.* JAMES.

5. The law presumes that proceedings in court were fairly and regularly conducted, where it is admitted they were begun and prosecuted by an attorney of good character and professional standing; but this presumption may be rebutted by proof of actual fraud in the transaction.

(*Williams* v. *Williamson*, 6 Ired., 281; *Grandy* v. *Ferebee*, 68 N. C., 356; *Francis* v. *Edwards*, 77 N. C., 271; *Roberts* v. *Roberts*, 82 N. C., 29; *Parish* v. *Fite*, 2 Mur., 258; *Kelly* v. *Goodbread*, Term Rep., 28; *State* v. *Rash*, 12 Ired., 382; *Brown* v. *Commissioners*, 63 N. C., 514; *Smith* v. *Moore*, 79 N. C., 82; *Curtis' Heirs*, 82 N. C., 435; *University* v. *Lassiter*, 83 N. C., 38, cited and approved.)

CIVIL ACTION tried at Fall Term, 1881, of ALEXANDER Superior Court, before *Seymour, J.*

Solomon Martin died intestate in 1862, owning the tract of land described in the complaint, leaving a widow, Rebecca, and four children, Nancy, wife of G. C. Meadows, of full age, and Abraham, Franklin and Mary, infants, to whom, as heirs at law and subject to dower, the said land descended. Franklin left the state in 1872, and never since being heard from is supposed to be dead.

On March 23d, 1871, Meadows and wife and Abraham Martin conveyed their respective shares, constituting an undivided moiety to the defendant William G. James, and he caused a petition to be filed in the probate court, employing John A. Stephenson, a practicing attorney, for that purpose, in the names of himself and the tenants, Franklin and Mary, represented by their mother, appointed guardian *ad litem*, for partition and sale.

The petition itself (verified by one James F. Stephenson, whose relations to the cause do not appear, and sustained by his affidavit and that of one Abraham Mayberry, the latter having been taken sometime afterwards) was granted by the probate judge, and a decree entered directing a sale of the premises and appointing the said attorney commissioner to conduct it. These proceedings all transpired on the same day, to-wit, on March 23d, when the defendant acquired his title. The land was sold to the defendant, on a credit of six

months at the price of $725 and he executed his note with surety for that sum. The commissioner's report was confirmed on August 23d, and he was ordered to proceed to collect the purchase money when due, and when paid, to make title to the defendant.

The order of sale, the report of the commissioner, and the final decree of confirmation and for title were severally presented to the judge of the district and approved by him. The commissioner collected the moiety of the purchase money due the infant petitioners, and leaving the residue in the hands of the defendant, on November 10th conveyed the land to him. The fund collected by the commissioner was deposited in the Bank of Statesville and has been lost.

The present action, instituted by the plaintiffs, (children and grand children of the intestate, Solomon) seeks to impeach the decrees and the proceedings connected therewith, for fraud practiced by the defendant, in order to secure title to himself; and they allege that the names of the two infant tenants, as also that of their mother, as guardian *ad litem,* were used without the knowledge or consent of either, and with no lawful authority from any source, as were all the proceedings in the cause—hurried to a conclusion through the agency of the attorney acting in behalf of the defendant, and by a sale at a price below the value of the land; and they ask that the recited decrees, thus obtained through the falsehood and fraud of the defendant, may be set aside and annulled and his pretended conveyance of title be declared void, and for general relief.

The defendant does not controvert the plaintiffs' allegations of matter appearing of record in the suit for partition and sale, but he avers that the mother had full knowledge of what was done and made no objection thereto, nor to the sale at which she was present, and denies the imputed fraud, and any wrong intended or done to his associate petitioners in any respect. In an amendment to his answer the defendant insists that the deed from Nancy Meadows to him, executed in June, 1868, estops the plaintiffs, who claim as

heirs under her from setting up title to the share descended from their uncle Franklin, and that the same if any vests in him under that conveyance.

The matters in controversy were submitted to the jury and their findings are for the plaintiffs. From the judgment thereon the defendant appeals.

*Mr. D. M. Furches*, for plaintiffs.
*Messrs. Robbins & Long*, for defendant.

SMITH, C. J., after stating the foregoing facts. With this succinct narrative of facts, and of the action of the court, we proceed to consider and dispose of the exceptions shown in the record.

1. The defendant proposed to prove by a witness that the deceased attorney, J. A. Stephenson, in his life-time asked witness to become guardian to the infants, Franklin and Mary, and receive their share of the proceeds of sale, and that in the conversation he stated he was their attorney. This evidence, on objection, was rejected for incompetency. The declaration, as evidence of an antecedent professional employment in a cause then in progress, cannot be defended, as accompanying and explaining an act, for an agent's declarations are not admissible to prove his authority. The agency must be first shown *aliunde*, before the declarations can be received to affect an alleged principal. *Williams* v. *Williams*, 6 Ired., 281; *Grandy* v. *Ferebee*, 68 N. C., 356; *Francis* v. *Edwards*, 77 N. C., 271. These tenants were then respectively of the age of 17 and 14 years, and had no legal capacity to contract or constitute an agent for the disposition of their property, and it was not proposed to prove employment by the mother on their behalf, acting as guardian *ad litem*.

The excluded evidence is but mere hear-say, and is not

admissible as part of the *res gestæ*. 1 Greenl. Ev., §§ 109, 110. *Roberts* v. *Roberts*, 82 N. C., 29.

Besides, the record shows and the defendant testifies to the fact that the attorney did, in filing the petition, act for all the parties, and the excluded evidence goes no further, for it does not profess to show the authority for representing the infant owners, but only that he was the attorney for them, a matter not in dispute. No harm could, therefore, come from the exclusion.

2. The second exception is to the refusal of the court to permit proof of the good character of the attorney to be introduced when offered during the examination of witnesses. Whatever force there may be in the objection to this ruling, it is removed by the intimation of the court afterwards and before the retirement of the jury, that the evidence would be heard, and the plaintiff's admission of what it was proposed to prove. It is not only the right but the duty of the judge who may have committed an error during the progress of a trial, to correct it as soon as discovered, and this was done in the present case.

The proved fact was before the jury and not mere evidence of it, and in this respect the defendant's case was more favorably presented than if the evidence had been permitted. As the court may withdraw evidence improperly admitted when the error is discovered and instruct the jury to disregard it, so that which has been wrongfully excluded may be allowed to be introduced before the jury retire, and in either case the grounds of complaint of the first rulings are removed. It is true the appropriate time for the introduction of testimony is during the examination of the witnesses, and before argument, but the conduct of the trial must be left largely to the sound discretion of the presiding judge, and unless an uncorrected error has been committed, no objection to its exercise will be entertained. This is the import of the cases upon this point referred to in the brief

of defendant's counsel—*Parish* v. *Fite*, 2 Murph., 258; *Kelly* v. *Goodbread*, Term Rep., 28; *State* v. *Rash*, 12 Ired., 382; *Brown* v. *Commissioners*, 63 N. C., 514.

3. The defendant also objects to the limited effect given to the deed from Meadows and wife to himself, and in not extending its operation to the interest afterwards acquired by the feme in the share of her supposed deceased brother Franklin. The construction put upon the deed by the court is, in our opinion, correct. It conveys in terms " all their right, title, interest and claim they have now, or may hereafter have in and to the estate, personal and real, belonging to the estate of Solomon Martin, deceased, Nancy Meadows being a daughter of Solomon Martin, deceased, and they being *heirs to one-fourth of the real estate*, there being three other children, and one-fifth of the personal estate, there being a widow also." The deed was executed in June, 1868, when Franklin was living, and it is apparent, was not intended to embrace more than the grantor, Nancy, *then owned* and was able to convey. Her share in the estate of her brother is as distinct and separate an estate as if he had derived his title from some other source, and did not exist in any form when the deed was made.

4. The next objection is that the personal representative of the attorney, Stephenson, is not a party to the action. If this were necessary to a full adjudication and adjustment of the matter in controversy, he has no direct interest in the determination of the issues made in the pleadings.

It is not material to his estate whether the proceeding for partition and sale are successfully impeached or not, nor is it important to the parties to the action that he should be before the court, and if it were he can still be brought in without disturbing what has been already done.

Whoever may be entitled to the fund which was in the hands of the commissioner may pursue it still. The results show that it belongs to the defendant, and he can maintain

suit for its recovery.   This is expressly decided in the case of *Smith* v. *Moore,* 79 N. C., 82.   See also *Curtis' Heirs,* 82 N. C., 435.

5. The last exception to be noticed is taken to the charge of the court, and in this we discover no error prejudicial to the defendant.   The instruction was in substance, that the admission that the proceedings were begun and prosecuted by a regular attorney of the court, of good character and professional standing, made a *"conclusive presumption of law that they were regular and the parties properly made, unless the parties show actual fraud in the transaction,"* meaning, as we understand, fraud perpetrated by the defendant in securing the title to the land through the instrumentality of the suit.   There is nothing in this obnoxious to objection, for fraud in obtaining the property of another can no more prevail when its object is sought to be attained through the form of a judicial proceeding, than when it is attempted by means of a deed.   When entering into a judgment, as when entering into a conveyance, it alike vitiates and annuls.

Nor was it wrong in the court to tell the jury that "the character and *bona fides* of the attorney who filed the petition, were not necessarily involved in the issue," as he may have acted upon the false information of the defendant. This aspect of the case was certainly presented by the evidence, and while there may have been complicity between the defendant and the attorney, it was by no means a necessity arising out of their relations, and the latter may have acted upon representations in the integrity of which he fully confided, when he undertook to represent all the parties interested.

We take the occasion to say that courts should be slow to disturb judicial proceedings conducted regularly to final judgment, under the constant supervision of the judge, upon the application of one who alleges that the attorney acted without his authority.   It is of the highest importance that

the integrity of judicial action be maintained, and rights and interests determined by the adjudication be protected. Generally it must be assumed that those who undertake to act as attorneys for a party to the litigation, and are recognized by the court as such, possess the required authority to represent them; and we simply refer to what is said on this subject to the cases of *University* v. *Lassiter*, 83 N. C., 38, and *Sutton* v. *Schonwald*, at this term, ante, 198.

The present case stands upon a different footing, and the absence of authority to act for the infants, petitioners, is among the proofs of the fraudulent conduct of the defendant in the initiation and prosecution of the proceeding to its intended result.

There is no error, and the judgment must be affirmed.

No error. Affirmed.