## HOBBS–WESTERN CO. v. EMPLOYERS' LIABILITY ASSUR. CORPORATION, LIMITED, OF LONDON, ENGLAND.

### No. 11254.

Circuit Court of Appeals, Eighth Circuit.

March 2, 1939.

Fadjo Cravens, of Fort Smith, Ark., and Claude Duty, of Rogers, Ark. (Jeff Duty, of Rogers, Ark., on the brief), for appellant.

Henry Donham, of Little Rock, Ark. (Martin K. Fulk, of Little Rock, Ark., on the brief), for appellee.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

This action at law was brought by Hobbs-Western Company, a corporation, to recover the amount of a loss sustained by it and alleged to be within the coverage of an automobile insurance policy issued to it by the defendant Employers' Liability Assurance Corporation, Ltd. The case was removed from the state to the federal court because of diversity of citizenship and more than three thousand dollars in controversy, and was tried by the court without a jury pursuant to written stipulation duly recorded. There was judgment for the defendant and the plaintiff appeals.

The liability policy sued on covered fourteen motor vehicles used in the business of the Hobbs-Western Company, each of which was particularly described together with its pro rata premium in the "Schedule of Automobiles" made part of the policy. There were the customary clauses concerning notice and investigation, settlement, defense of claims and payment of judgment in cases defended by the insurance company.

The policy provisions also accorded the assured the right to have other automobiles acquired by the assured or by any individuals in its service included in the insurance coverage of the policy. By the terms of these provisions all the Hobbs-Western Company was required to do in order to obtain the same insurance on any additional automobile acquired by it or by an individual in its service, was to accurately record upon its schedule of insured cars the day and date when the additional car was acquired and to transmit a copy of the schedule showing the entry thereon of the additional car to the insurance company at the end of the calendar month and to pay a pro rata premium for such added car. The insurance on the additional car would then be effective as of the date when the car was acquired and entered on the schedule.[1] No day was specified when the assured should pay the additional premium for the after acquired cars, the insurer contenting itself with the agreement of the assured to pay the premium therefor and with the procedure provided to reveal such obligation in the manner and within the time prescribed.

It appears that on April 17, 1934, during the life of the policy and thirteen days before its expiration date "a truck owned and operated by one Archie Williams, loaded with ties belonging to the Hobbs-Western Company, was involved in an accident near Hope, Arkansas, in which a passenger car driven by one Glen Carmical was sideswiped, said Glen Carmical sustaining injuries to his left arm necessitating its amputation." The truck involved in the accident was not, and was never claimed to be, one of the motor vehicles scheduled in the policy.

Mr. O. C. Rowe, the agent of the Hobbs-Western Company in charge of its insurance matters, investigated the accident and on his return to St. Louis called to his office a Mr. S. C. Clubb, who was the soliciting agent employed on commission by the insurance company's St. Louis Agency. He had solicited the policy in suit in the first instance and was always called upon to procure the blanks for formal notices required by the policy. The results of the investigation of the accident were disclosed at the conference and both Mr. Rowe and Mr. Clubb were of the opinion that the accident had not been occasioned by any automobile which had been acquired by the Hobbs-Western Company or by any individual in its service within the meaning of the policy, but that the truck was being operated at the time of the accident by an independent contractor who was transporting the ties at an agreed price. Accordingly, the Hobbs-Western Company made no entry upon its schedule of insured automobiles to show that it or any individual in its service had acquired the Archie Williams car and it permitted the "end of the calendar month" of April 1934 to pass without indicating to the insurance company that such car had been, or was claimed to have been acquired, or that any pro rata premium was chargeable against Hobbs-Western Company on account thereof, and it has at no time made any offer to pay any premium to cover insurance on the truck.

After the expiration of the policy and on the 7th day of June 1934, the man who was injured in the accident, Glen Carmical, brought an action for damages for his injuries in the Circuit Court in Arkansas, against the Hobbs-Western Company on the ground that the accident had been caused by the joint negligence of Hobbs-Western Company and its servants in the operation of the Archie Williams' truck. The Hobbs-Western Company employed counsel and defended the action, and judgment for $15,000 and costs and attorney's fees was rendered against it in the Circuit Court which was affirmed by the Supreme Court of Arkansas and paid in full. Hobbs-Western Co. v. Carmical, 192 Ark. 59, 91 S.W.2d 605.

Demand for reimbursement having been refused by the insurance company, the Hobbs-Western Company brought this action on the policy to recover the amount of the loss sustained by it as a result of the accident.

It was alleged in the complaint and amendments thereto that the Archie Wil-

1 "Item 4. The description of the automobiles covered by this Policy is as follows, and the insurance granted shall apply only to those subsections of Agreement 1. (a), (b), (c) or (d) for which a premium charge is made as indicated in the following schedules subject to the limits and deductions hereinafter set forth, and also to all other agreements and Conditions of this Policy as specifically applied thereto. Any other coverages to be included under this Policy must be added by endorsement with the description thereof and the premium charges therefor included therein."

liams truck "was covered" by the insurance policy and that "at the time of the accident said truck was.being used in the service of the assured and that said truck was and is included" in the policy. It was also alleged that immediately after the occurrence of the accident full information and notice as to all details thereof were given to Mr. Clubb and that Mr. Clubb then advised the plaintiff that the policy sued on would not cover the accident and that the defendant was not liable under the policy. That Mr. Clubb was then "acting as agent for the defendant" insurance company, and that "such denial of liability and denial that said policy covered the accident" excused the plaintiff from complying with the notice and cooperation provisions of the policy. It was not alleged that the Carmical car was scheduled in the policy or that the plaintiff had complied with the conditions specified in the policy as necessary to extend the coverage of the policy to another or after "acquired" car. And it was not alleged that any premium had been paid to obtain coverage on that car or that the assured had done anything to obligate itself or render itself liable to pay any premium for insurance in respect thereto. Nor was there ever any offer to pay such premium.

The issuance of the policy was admitted by the insurance company but issue was joined by answer as to all other allegations.

The trial court found from the evidence, among other things, that the investigation of the accident shortly after its occurrence by the Hobbs-Western Company led that company to believe and it did believe that the car involved in the accident was not eligible to be brought within the coverage of the policy because it was not being used by any one in the service of the Hobbs-Western Company, but was being used by an independent contractor. That the Hobbs-Western Company

had accordingly made no attempt to and had not complied with the policy requirements to bring the car within the policy coverage and that it had paid no premium for insurance on the car because it "did not think the car was eligible for coverage" and that the car was not covered by the policy. Judgment of dismissal was accordingly entered and this appeal follows.

Contentions are argued in the brief for appellant to the effect that the truck involved in the accident was covered by the policy and that the court failed to find and give due weight to a waiver asserted and relied on by appellant. But the case was tried by the court without a jury and no motion for judgment or request for findings of fact or conclusions of law was made on behalf of the plaintiff. We are satisfied that the findings made by the court fully sustain the judgment and the sufficiency of the evidence to support the findings is not open for review. Eastman Kodak Co. v. Gray, 292 U.S. 332, 54 S.Ct. 722, 78 L.Ed. 1291.

The assignments of error are eleven in number. The first and second merely assign error in the final judgment and are insufficient under Ayers v. United States, 8 Cir., 58 F.2d 607, 608, and cases cited, and are not relied on in the brief. Assignments 3 and 4 assert error of the trial court "in construing rider No. 6 [2] attached to the policy" and the remaining assignments assert error of the trial court "in holding" certain things. The reference in these assignments is to the opinion filed by the trial court and none of them directs attention to any error in any specific finding of fact or ruling or declaration of law and none is sufficient to present any question of law for review. Squibb & Sons v. Mallinckrodt Chemical Works, 8 Cir., 69 F.2d 685.

Being persuaded that the appeal is without merit the judgment is affirmed.

---

[2] "Endorsement #6

"It is understood and agreed that the schedule of automobiles is hereby extended to cover any other automobiles acquired by the Assured or by any individual in the service of the Assured, provided the Named Assureds notify the Corporation in writing by means of the reports hereinafter required.

"The Named Assureds agree to maintain a complete and accurate record of any changes in or additions to the schedule of such automobiles in chronological order of the days and dates of such changes or additions, and to transmit a copy to the Corporation at the end of each calendar month; the Named Assureds agree to pay a pro rata premium based upon the automobiles added to the schedule.

"This Endorsement effective May 1st, 1933."